# In the United States Court of Federal Claims

No. 21-2049C
Filed: February 3, 2022[*]
FOR PUBLICATION

**CGS-SPP SECURITY JOINT VENTURE,**

    *Plaintiff*,

v.

**UNITED STATES,**

    *Defendant*.

*Robert Nichols*, Nichols Liu LLP, Washington, D.C., for the plaintiff.

*Joseph A. Pixley*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C.; *John W. Cox*, U.S. Department of State, of counsel, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

    The plaintiff, CGS-SPP Security Joint Venture, protests the award by the U.S. Department of State ("State") of a contract for local guard services at the U.S. Mission in Australia. The plaintiff has moved for judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), arguing that State erred by failing to consider the plaintiff's proposal. Before the submission deadline, the plaintiff had emailed its proposal to two of the contracting officers identified in the solicitation, but State did not open the emails or consider the plaintiff's proposal.

    The defendant has cross-moved for judgment on the administrative record. The defendant argues that the plaintiff has waived its objection because the solicitation contained a patent defect or ambiguity by not specifying to which official offerors were to email their proposals. In the alternative, the defendant argues that the solicitation was reasonably clear that

---

[*] Pursuant to the protective order in this case, the Court initially filed this opinion under seal on January 19, 2022 and directed the parties to propose redactions of confidential or proprietary information by February 2, 2022. (ECF 29.) The parties have jointly submitted to the Court a proposed redaction. (ECF 32.) The Court adopts that redaction, as reflected in this public version of the opinion. The redaction is denoted with three asterisks in square brackets, [* * *]. The Court also made one minor textual revision to improve clarity.

the plaintiff was required to email its proposal to the official identified as the Contract Specialist in the solicitation. According to the defendant, because the plaintiff failed to send its proposal to the proper recipient, State's failure to open and consider the plaintiff's proposal was reasonable.

The Court agrees with the defendant that the solicitation contains some ambiguity regarding which official was the appropriate recipient for emailed proposals. Because that ambiguity is latent, however, the plaintiff's objection is not waived. The plaintiff reasonably interpreted the solicitation to permit submission to the contracting officers designated in the RFP at the issuing government office.

The plaintiff's motion for judgment on the administrative record is granted, and the defendant's cross-motion for judgment on the administrative record is denied. The contract award is enjoined. State may either recompete the contract or revisit the proposals submitted in response to the original solicitation.

## I.     BACKGROUND

### A.     Solicitation

On December 2, 2020, State issued a negotiated request for proposals ("RFP"), solicitation number 19AQMM21R0036, seeking "a qualified Contractor to provide local guard services at the U.S. Mission Australia." (AR 1 & 6.[1]) The period of performance was to be a one-year base period and four one-year option periods to be exercised at the government's discretion. (AR 20.) Section M of the RFP provided that award would "be made to a responsive responsible offeror on the basis of the lowest evaluated price of proposals meeting or exceeding the technical requirements, (i.e., Lowest Price Technically Acceptable . . . )." (AR 127.) The submission deadline was originally January 3, 2021, but State later amended the RFP to extend the deadline to January 10, 2021. (AR 474.)

The first page of the RFP, the Standard Form 33 ("SF-33"), identified the Office of Acquisition Management as the issuer.[2] (AR 1.) The SF-33 designated Fabiola A. Bellevue as the contracting officer and directed offerors to email Nicholas Cloutier "for information." (*Id.* (capitalization omitted).)

Section G.1 of the RFP, titled "**DESIGNATION OF ADMINISTRATIVE CONTRACTING OFFICE**," provided the contact information of two officials at the Office of Acquisition Management. (AR 720 (capitalization and bold in original).) The first, Crystal

---

[1] Citations to the administrative record (ECF 18, *supplemented by* ECF 21) are cited as "AR" with the pagination reflected in that record as filed with the court.

[2] The SF-33, titled "Solicitation, Offer, and Award," is one of the prescribed forms for sealed bidding and contracting by negotiation. FAR 53.214(c); FAR 53.215-1(c).

Sutliff, was identified as the Primary Contracting Officer, and the other, Nicholas Cloutier, was identified as the Authorized Department of State Contract Specialist:[3]

>**Primary Contracting Officer (CO):**
>Crystal Sutliff, Contracting Officer
>Department of State
>Office of Acquisition Management
>A/OPE/AQM/DSCD/ATB
>1800 N. Kent Street, 11th Floor
>Arlington, VA 22209
>E-Mail: sutliffcm@state.gov
>
>**Authorized Department of State Contract Specialist:**
>Nicholas Cloutier, Contract Specialist
>Department of State
>Office of Acquisition Management
>A/OPE/AQM/DSCD/ATB
>180 N. Kent Street, 11th Floor
>Arlington, VA 22209
>E-Mail: cloutierns@state.gov

(*Id.* (bold in original).) Nicholas Cloutier was also the designated point of contact for offeror questions and clarifications. (AR 809.)

Section L.4 of the RFP, titled "**Time, Place, and Submission of Offer**," provided the instructions for submitting proposals and designated email as the method of submission:

> The Offeror shall assume full and total responsibility for ensuring electronic submission via email that its offer is received by:
>
> January 10, 2020 - 10:00 EASTERN STANDARD TIME (SEE BLOCK 9 OF THE SF-33).
>
> If an Offeror desires, it should contact Contract Specialist Nicholas Cloutier, at email (CloutierNS@state.gov) 48 hours in advance to notify of submission of offer.

(AR 809 (capitalization and bold in original).) The submission date, January 10, 2020, was a typographical error; the intended, correct date was January 10, 2021.

Section L.4 began a chain of cross-references ending in Item 7 of the SF-33. Block 9 of the SF-33, cross-referenced in Section L.4, provided that offers "will be received at the place specified in Item 8 . . . ." (AR 1.) Item 8 of the SF-33 provided, "ADDRESS OFFER TO (If

---

[3] The defendant notes that at some point Mr. Cloutier was elevated from Contract Specialist to Contracting Officer, but the RFP was not amended to reflect the change. (ECF 22 at 7-8 n.4.)

other than Item 7)," and was otherwise blank.  (*Id.* (capitalization in original).)  Finally, Item 7 identified the issuing office and provided a physical mailing address at a post-office box:

> OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM)
> PO BOX 9115, ROSSLYN STATION
> US DEPARTMENT OF STATE
> ARLINGTON, VA 22219

(*Id.* (capitalization in original).)

Item 7 did not identify any specific recipient for the proposals.

Aside from extending the submission deadline, the RFP's amendments did not change the submission instructions in Section L.4 or the information on the SF-33.  (*See* AR 1, 112, 809.)

### B.    Proposal Submissions and Award

Before the submission deadline on January 10, 2021, the plaintiff emailed its proposal to both contracting officers identified in the RFP, Fabiola Bellevue and Crystal Sutliff, and to another contracting officer at State not referenced in the RFP, Jonathan Elsasser.[4]  (AR 841-54.)  On the cover page of each volume of its proposal, the plaintiff addressed its proposal to "Nicholas Cloutier, Contracting Officer," but Mr. Cloutier was not included on the plaintiff's email submitting its proposal to State.  (AR 855 & 1155.)  The record does not explain the plaintiff's failure to transmit its proposal to Mr. Cloutier, the actual addressee on the cover page.

Mr. Cloutier has acknowledged that none of the three recipients in State's Office of Acquisition Management to whom the plaintiff emailed its proposal "read, replied to, or forwarded the emails, or opened the attachments."  (AR 2674.)  According to Mr. Cloutier, "Mr. Elsasser and Ms. Sutliff did not recognize the solicitation number, and as branch chief for the local guard branch Ms. Bellevue is routinely copied on proposal submissions sent to the cognizant contracting officers in her branch."  (*Id.*)  Although Ms. Sutliff failed to recognize the solicitation number, the subject line of the plaintiff's emails correctly provided 19AQMM21R0036 as the solicitation number.  (*See* AR 841-54.)

---

[4] The defendant asserts that the plaintiff's emails in the record show the names of the recipients but not their email addresses. (ECF 25 at 6 (citing AR 841-847).)  That assertion is erroneous.  In the second email of the thread (the proposal was sent in five separate emails), the email header expands the contact names and reveals the recipients' email addresses.  (*See* AR 842.)  Ms. Sutliff's email address matches her email address in the RFP: SutliffCM@state.gov.  (*Compare* AR 720, *with* AR 842.)  Because Ms. Bellevue's email address is not provided in the RFP, the Court cannot compare her email address against one in the RFP.  Mr. Cloutier acknowledged, however, that both contracting officers received the emails, so this question of whether the plaintiff sent its proposal to the correct email addresses for Ms. Sutliff and Ms. Bellevue is not at issue.  (AR 2674.)

State received and evaluated proposals from two other offerors and ultimately awarded the contract to the incumbent, MSS Security, on March 17, 2021. (*See* AR 2041-46, 2513-20.) The award amount was [* * *] than the plaintiff's proposed price. (ECF 16, ¶ 3.)

Notice of the award was not posted in the System for Award Management ("SAM") or on State's own website. The plaintiff only learned of the award from a commercial website on July 7, 2021. (*Id.* ¶¶ 15-16; *see also* AR 2660, Decl. of Steve Hartsuff.) On the same day, the plaintiff contacted State to confirm the press report; State confirmed on July 12 that award had been made to MSS Security in March and that State had not received the plaintiff's proposal. (AR 2655-58.) State took the position that the plaintiff was not considered for award because the plaintiff had been required to submit its proposal to Mr. Cloutier (AR 2663), and the plaintiff had failed to do so.

On July 19, 2021, the plaintiff filed a protest at the Government Accountability Office ("GAO"), arguing that State "violated the RFP and acted unreasonably when it rejected/failed to consider CGS-SPP's timely proposal submitted in accordance with the RFP." (AR 2646.) The GAO *sua sponte* dismissed the protest on a basis not raised by the defendant: the GAO found that the RFP contained a patent defect or ambiguity because it did not expressly state to which email address offerors were required to send their email submissions. *Continuity Glob. Sols.-SPP Sec. Joint Venture*, B-419997, 2021 CPD ¶ 340, 2021 WL 4818101, at *4 (Comp. Gen. Oct. 12, 2021). Because the RFP contained a patent defect and the plaintiff had failed to seek clarification or object prior to the award, the GAO held that the plaintiff had waived its objection. *Id.* at *5. (*See also* AR 4279-84 (providing the GAO's decision in the record).)

### C. Procedural History

On October 20, 2021, the plaintiff filed its complaint in this court. (ECF 1, *amended by* ECF 16.) The plaintiff alleges a single count, arguing that "State's rejection of CGS-SPP's proposal and failure to consider CGS-SPP's proposal violated the RFP and applicable regulations and was arbitrary, capricious, and an abuse of discretion . . . ." (ECF 16, ¶ 4.) The plaintiff seeks injunctive relief, bid-protest costs, and any other relief that the Court deems just and proper. (*Id.*, Prayer for Relief.)

The parties have cross-moved for judgment on the administrative record. (ECF 19 & 22.) The matter has been fully briefed, and the Court heard oral argument on January 6, 2022. Following oral argument, the plaintiff sought leave to file a supplemental brief (ECF 26) to address questions at oral argument over whether the plaintiff's delay in bringing this action should preclude injunctive relief if the plaintiff prevailed on the merits. The Court accepted the plaintiff's brief and allowed the defendant to file its own brief on the issue, and the defendant did so. (ECF 28.)

## II. JURISDICTION

Under this court's bid-protest jurisdiction, the court may hear actions "by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract

or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

To establish standing under this court's bid-protest jurisdiction, a protestor must be an "interested party." *Id.* To be an interested party, a protestor must allege facts, which if true, "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). In a post-award bid protest, the protestor's complaint must "show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (citation omitted)).

The defendant does not challenge the Court's jurisdiction over this case. The plaintiff here challenges a contract award by State in connection with a procurement. (ECF 15, ¶ 7.) The plaintiff was an actual bidder and, with a lower price than the awardee in a Lowest Price Technically Acceptable procurement, would have had a substantial chance of award but for State's alleged error. (*Id.* ¶ 8.) Accordingly, the Court has jurisdiction over the plaintiff's case.

### III. STANDARD OF REVIEW

The parties have cross-moved for judgment on the administrative record under RCFC 52.1. On a motion for judgment on the administrative record, the court's review is limited to the administrative record, and the court makes findings of fact as if it were conducting a trial on a paper record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The court must determine whether a party has met its burden of proof based on the evidence contained within the administrative record. *Id.* at 1355. Unlike motions for summary judgment, genuine issues of material fact will not foreclose judgment on the administrative record. *Id.* at 1356.

Bid protests are evaluated under the Administrative Procedure Act's standard of review. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706). Under that standard, an agency's procurement action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A court may grant relief only upon the finding that either "the procurement official's decision lacked a rational basis" or "the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001).

### IV. DISCUSSION

The plaintiff argues that it submitted its proposal in accordance with the RFP, and that State acted improperly by not considering its proposal. (ECF 19.) The defendant argues that the plaintiff has waived its objection because the RFP contains a patent ambiguity that was not raised before award. (ECF 22 at 12-18.) In the alternative, the defendant argues that the RFP

"makes reasonably clear that offerors should send proposals to Mr. Cloutier," and that the plaintiff failed to deliver its proposal to the correct place. (*Id.* at 18.)

### A. Waiver

Under *Blue & Gold Fleet* and its progeny, "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

*Blue & Gold Fleet* was an extension of the existing doctrine of patent ambiguity, which provided that "where a government solicitation contains a patent ambiguity, the government contractor has 'a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation' in a subsequent action against the government." *Id.* (quoting *Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996))). Under Federal Circuit precedents, this waiver rule now applies "to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so." *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012). "[A]ssuming that there is adequate time in which to do so, a disappointed bidder must bring a challenge to a solicitation containing a patent error or ambiguity prior to the award of the contract." *Id.*

There are within the framework of the waiver doctrine two interrelated issues: what type of claim must be raised early and by when must such a claim be presented to avoid the effects of the waiver rule. As to the first issue, a claim must be presented early when the solicitation contains a patent defect or ambiguity. As to the timing, generally the claim must be presented before the agency makes an award under the solicitation. *Id.*

As to timing, the plaintiff here fails the requirement that the protest be made prior to the award. The sole question then is whether the plaintiff has presented the type of claim that must be made before award or is otherwise waived. For the plaintiff's claim to be waived, the Court must find both that the RFP was ambiguous or defective and that it was patently so. *Cf. VS2, LLC v. United States*, 155 Fed. Cl. 738, 754-57 (2021).

#### 1. Defect or Ambiguity

To interpret a solicitation, courts employ the same principles that govern the interpretation of contracts. *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1344 (Fed. Cir. 2021). Thus, courts "begin with the plain language of the document." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004). The terms of a solicitation are "ambiguous only if [the] language is susceptible to more than one reasonable interpretation." *Id.*; *accord E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1341 (Fed. Cir. 2004). A defect is an "'omission, inconsistency or discrepancy of significance.'" *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312 (Fed. Cir. 2016) (quoting *E.L. Hamm & Assocs., Inc.*, 379 F.3d at 1339).

Section L.4 of the RFP provided the instructions for proposal submission, designating email as the method of submission and cross-referencing Block 9 for location:

> The Offeror shall assume full and total responsibility for ensuring electronic submission *via email* that its offer is received by:
>
> January 10, 2020 - 10:00 EASTERN STANDARD TIME (*SEE BLOCK 9 OF THE SF-33*).
>
> If an Offeror desires, it should contact Contract Specialist Nicholas Cloutier, at email (CloutierNS@state.gov) 48 hours in advance to notify of submission of offer.

(AR 809 (capitalization in original) (emphasis added).)  Block 9 of the SF-33 provided that offers "will be received at the place specified in Item 8 . . . ."  (AR 1.)  Item 8 of the SF-33 provided, "ADDRESS OFFER TO (If other than Item 7)," and was otherwise blank.  (*Id.* (capitalization in original).)

The end of the line of cross-references, Item 7 of the SF-33, identified the issuing office and provided a physical address:

> OFFICE OF ACQUISITION MANAGEMENT (A/LM/AQM)
> PO BOX 9115, ROSSLYN STATION
> US DEPARTMENT OF STATE
> ARLINGTON, VA 22219

(*Id.* (capitalization in original).)

The plaintiff argues that it submitted its proposal in compliance with the terms of the RFP, and that the RFP did not contain a patent defect or ambiguity.  (ECF 19 at 5-6, 9-10.)  The RFP provided the method of submission and the government office to which proposals were to be submitted.  According to the plaintiff, all it had to do to comply with the RFP was to deliver its proposal by email to the government office by the deadline, and no terms of the RFP impose a stricter requirement.  (*Id.* at 5-6.)

The defendant first argues that the RFP has an inconsistency by requiring "offerors to electronically send proposals via e-mail to a PO box address - - which is impossible."  (ECF 25 at 4 (emphasis omitted).)  Although Section L.4 of the RFP designated email as the method of submission and led to a physical address in Item 7 of the SF-33, the RFP did not expressly require the impossible instruction of emailing proposals to a physical address, as the defendant argues.  In Section G.1, titled "Designation of Administrative Contracting Office," the RFP provided email addresses of officials involved in the procurement at the designated government office from Item 7 of the SF-33.  (AR 720 (capitalization modified and bold omitted).)  These instructions are facially consistent.  Nonetheless, the issue is irrelevant to this case.  The plaintiff did not attempt to submit its proposal to the physical address, and neither did any other offeror.  The plaintiff instead objects to State's interpretation of the RFP requiring submission of proposals by email directly and only to Mr. Cloutier.

The defendant also argues that the RFP contained an ambiguity by not designating an intended recipient of proposals. (*Id.* at 15-16.) This alleged ambiguity is the basis on which the GAO dismissed the plaintiff's protest. *Continuity Glob. Sols.-SPP Sec. Joint Venture*, 2021 WL 4818101, at *4-5. The GAO noted that the RFP did not identify the intended recipient of proposals and found that "the solicitation was defective because it failed to specify expressly a place for submission of proposals and this defect was apparent on the face of the solicitation." *Id.* at *4. Factually, the GAO is correct that the RFP did not designate a specific individual to receive offerors' proposals, but the RFP did identify the government office to which proposals had to be submitted.

Legally, however, this case involves the issue of ambiguity, on which the GAO resolved the plaintiff's protest and which the defendant asserts here. Neither party has cited any law requiring an agency to designate a specific email recipient. An applicable provision of the Federal Acquisition Regulations ("FAR") imposes on offerors the responsibility "for submitting proposals, and any revisions, and modifications, so as to reach *the Government office designated in the solicitation* by the time specified in the solicitation" and permits offerors to "use any transmission method authorized by the solicitation . . . ." FAR 15.208(a) (emphasis added). The RFP in this case designated the government office as State's Office of Acquisition Management and designated the method of submission as email.

The defendant relies on *Watterson Const. Co. v. United States*, 98 Fed. Cl. 84, 93 (2011), to argue that the "Government office" can be a specific contracting officer's email address. (ECF 22 at 17.) *Watterson* does not help the defendant. In that case, the solicitation itself designated a specific official's email address for proposal submissions, and as a result the court had no occasion to decide whether an agency must designate a specific email address to avoid the existence of an ambiguity or defect. *Watterson*, 98 Fed. Cl. at 92-93. Here, in contrast, the Court is faced with a solicitation that fails to include an express term designating a specific, intended agency recipient of proposals submitted by email.

Contrary to the defendant's reading of *Watterson*, there is no legal requirement that an agency designate an email recipient, although requiring submission of proposals by email, as a practical matter, obviously requires the RFP to specify an email address. Item 7 of the SF-33 did not specify an email address, but the RFP did provide the email addresses of Ms. Sutliff and Mr. Cloutier, who were both designated as officials involved in the procurement at the Office of Acquisition Management. (AR 720.) They were listed in Section G.1 of the RFP, titled "Designation of Administrative Contracting Office." (*Id.* (capitalization modified and bold omitted).) Neither official was explicitly designated as the intended recipient of proposals.

Both parties offer reasonable interpretations of the RFP. On the one hand, the plaintiff argues that submission to Ms. Sutliff (and two other contracting officers in the Office of Acquisition Management) was permitted because the plaintiff was required only to deliver the proposal to the designated government office. The plaintiff's approach is consistent with the RFP and the FAR. On the other hand, the defendant argues that the RFP required submission to Mr. Cloutier, given the references to him in the RFP and the fact that his email address is the only one provided in Section L.4 and on the SF-33. The defendant's approach is also consistent with the RFP and the FAR.

The text of the RFP leaves the matter in question, and the Court finds both interpretations to be reasonable. Because the RFP is susceptible to two reasonable interpretations, it is ambiguous. *See Banknote Corp. of Am.*, 365 F.3d at 1353. The ambiguity is the uncertainty as to whom, specifically, offerors were required to submit their proposals.

### 2. Latency

Although the RFP was ambiguous, the ambiguity must be patent for the waiver rule of *Blue & Gold Fleet* to apply. A patent error is "'an obvious omission, inconsistency or discrepancy of significance'" that "could have been 'discovered by reasonable and customary care.'" *Per Aarsleff A/S*, 829 F.3d at 1312-13 (quoting *E.L. Hamm & Assocs., Inc.*, 379 F.3d at 1339 and *Analytical & Rsch. Tech., Inc. v. United States*, 39 Fed. Cl. 34, 46 (1997)). A document is patently ambiguous when it "contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *Stratos Mobile Networks USA, LLC*, 213 F.3d at 1381.

In contrast, with reference to a contract claim, for example, "[a] contractor . . . may recover for a latent ambiguity." *E.L. Hamm & Assocs., Inc.*, 379 F.3d at 1342 (citing *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 751 (Fed. Cir. 1999)). The Federal Circuit has defined a latent ambiguity as "'a hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable and customary care, and is not so patent and glaring as to impose an affirmative duty on plaintiff to seek clarification.'" *Per Aarsleff A/S*, 829 F.3d at 1312-13 (quoting *Analytical & Rsch. Tech., Inc.*, 39 Fed. Cl. at 46 (internal quotation marks and citation omitted)).

The RFP contains no relevant facially inconsistent provisions. Although the RFP did not expressly designate an email recipient, the RFP provided the method of proposal submission, the government office, and email addresses of officials involved in the procurement at that office. (AR 1, 720, 809.) The ambiguity—the uncertainty of which official was permitted to be a recipient of proposals—is not apparent on the face of the document and does not implicate inconsistent provisions.

The RFP identified both Ms. Sutliff and Mr. Cloutier as officials involved in the procurement at the Office of Acquisition Management. (AR 720.) On the face of the document, neither was designated the recipient for proposals, but the RFP did not exclude either from receiving them. Ms. Sutliff was identified as the Primary Contracting Officer. (*Id.*) Under the FAR, the contracting officer is the "person with the authority to enter into . . . contracts . . . ." FAR 1.602-1(a); *see also* FAR 1.602-2; FAR 2.101 (definition of "contracting officer").

Mr. Cloutier was identified as the Contract Specialist. (*Id.*) The FAR does not include a definition of this term. The RFP specifically referenced him as the person to whom questions, comments, and requests for information or clarification should be directed. (AR 809.) He was also the person to whom an offeror "if [it] desires" may provide notice of an offer 48 hours prior to the deadline for submission. (*Id.*) Nowhere, however, was Mr. Cloutier designated as the sole, proper recipient for proposals.

10

Either Ms. Sutliff or Mr. Cloutier appears to have been a permissible recipient of a proposal to comply with the terms of the RFP. The ambiguity is apparent now, in hindsight, only because State is arguing that the recipient should have been one official rather than the other, albeit without direct textual support in the RFP. This defense relies on an after-the-fact, unstated requirement not apparent from the face of the RFP.

The question is a close one. The GAO decided the ambiguity was patent. The interpretation of the terms of a solicitation is a question of law which the Court resolves *de novo. Per Aarsleff A/S*, 829 F.3d at 1309. The Court resolves the issue differently.

The plaintiff submitted a proposal to the two officials identified in the RFP as contracting officers; it addressed its proposal to the official identified as a contracting specialist but failed to submit the proposal to him. The RFP itself did not specify anyone to receive the proposal. On the face of the RFP there is no patent ambiguity, because at least one of the contracting officers listed in the RFP had an email address associated with her. The defendant may not create a patent ambiguity when it decides that it will only consider proposals sent to one individual but does not inform potential offerors of that limitation. By not informing potential offerors that only proposals received by Mr. Cloutier would be considered, State itself created the ambiguity not otherwise evident on the face of the RFP. Any ambiguity as to the proper recipient of proposals under the RFP is not apparent on the face of the RFP, so that ambiguity is latent. *See Per Aarsleff A/S*, 829 F.3d at 1312-13. Accordingly, the plaintiff's claim is not waived.

### B.     CGS-SPP's Proposal Submission to Contracting Officers

"In the case of latent ambiguity, the normal rule of *contra proferentem* applies if the contractor's interpretation is reasonable," and to prevail "'the contractor must have relied on its interpretation of [the ambiguous] provision when preparing its bid.'" *LAI Servs., Inc. v. Gates*, 573 F.3d 1306, 1317 (Fed. Cir. 2009) (quoting *P.R. Burke Corp. v. United States*, 277 F.3d 1346, 1356 n.3 (Fed. Cir. 2002)). Courts apply the general rule of *contra proferentem* "to construe ambiguities against the drafter," which in this case is the defendant. *See E.L. Hamm & Assocs., Inc.*, 379 F.3d at 1342. Courts "must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions." *Banknote Corp. of Am.*, 365 F.3d at 1353. The plaintiff's interpretation of the RFP was reasonable.

The defendant argues that the RFP was "reasonably clear" that offerors were required to email proposals to Mr. Cloutier (ECF 22 at 18), but nothing in the RFP designated Mr. Cloutier as the only permissible recipient of proposals. Mr. Cloutier was referenced several times in the RFP:

- Item 10 of the SF-33 directed offerors to email Mr. Cloutier "for information." (AR 1 (capitalization omitted).)

- Item 6 of the Standard Form 30, Amendment of Solicitation/Modification of Contract, identified Mr. Cloutier as the issuer of the operative RFP amendment. (AR 697.)

- Section G.1 of the RFP identified Mr. Cloutier as the Authorized Department of State Contract Specialist.  (AR 720.)

- Section L.4 of the RFP provided, "If an Offeror desires, it should contact Contract Specialist Nicholas Cloutier, at email (CloutierNS@state.gov) 48 hours in advance to notify of submission of offer."  (AR 809.)

- Section L.6 of the RFP directed offerors to submit "questions, comments, exceptions, or clarifications" to Mr. Cloutier by email.  (*Id.*)

Not one of these references directed offerors to email their proposals to Mr. Cloutier and only to Mr. Cloutier.

The plaintiff, in contrast, reads the RFP to have required only that proposals be sent by email to the designated government office.  Section L.4 of the RFP designated the method of submission as email, and, through a series of cross-references, Item 7 of the SF-33 identified the government office, the Office of Acquisition Management.  (AR 1 & 809.)  In Section G.1, titled "Designation of Administrative Contracting Office," the RFP provided two email addresses of officials involved in the procurement: sutliffcm@state.gov and cloutierns@state.gov.  (AR 720 (capitalization modified and bold omitted).)

The Court finds that the plaintiff reasonably interpreted the RFP to permit email submission to Ms. Sutliff's email address and that this reading is the most reasonable interpretation of the RFP.  Ms. Sutliff was listed in the section designating the administrative contracting office, and she was explicitly designated the Primary Contracting Officer.  (*Id.*)  The plaintiff also emailed its proposal to the contracting officer listed on the SF-33 and another contracting officer not listed in the RFP.  (AR 841-54.)  By emailing its proposal to two contracting officers identified in the RFP before the submission deadline, the plaintiff complied with the most reasonable interpretation of the RFP's terms.

The RFP placed "full and total responsibility" on offerors for ensuring proposals were received on time.  (AR 809.)  The contracting officers did receive the plaintiff's proposal on time.  Mr. Cloutier averred that "Mr. Elsasser and Ms. Sutliff did not recognize the solicitation number, and as branch chief for the local guard branch Ms. Bellevue is routinely copied on proposal submissions sent to the cognizant contracting officers in her branch."  (AR 2674.)  As a result, no one "read, replied to, or forwarded the emails, or opened the attachments."  (*Id.*)  Regardless of the government's actions or, in this case, inaction, the plaintiff fulfilled its responsibilities under the RFP when State's contracting officers in the office designated by the RFP received the plaintiff's timely submission of its proposal.  Ms. Sutliff apparently did not recognize the solicitation number of a solicitation in which she was listed as the Primary Contracting Officer.  The subject line of the plaintiff's email correctly provided 19AQMM21R0036 as the solicitation number.  (AR 841.)  This is not a case in which an offeror submitted its proposal to some agency recipient in the hope that the proposal would wind up getting to the appropriate official.  Ms. Sutliff was identified as the Primary Contracting Officer for the RFP, and Ms. Bellevue was listed as the contracting officer on the SF-33.  (AR 1 & 720.)  State erred by not opening the plaintiff's email and not considering its proposal.

Although the plaintiff fulfilled its responsibilities under the RFP, the plaintiff must bear some degree of fault. The plaintiff sent its email submission to Mr. Elsasser, a contracting officer not listed in the RFP, and its proposal was addressed to Mr. Cloutier, so someone at CGS-SPP must have thought Mr. Cloutier to be the intended recipient. (*See* AR 841-54, 855, 1155.) These facts, however, do not undercut the plaintiff's compliance with the RFP, and under the doctrine of *contra proferentem* these errors by the plaintiff do not outweigh State's error in failing to specify in the RFP the lone proper recipient of proposals.[5]

As required to prevail in a bid protest, the plaintiff was prejudiced by that error. A "protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" *Alfa Laval Separation, Inc.*, 175 F.3d at 1367 (quoting *Statistica, Inc.*, 102 F.3d at 1582). If State had not erred here, the plaintiff would have had a substantial chance of award. The RFP was evaluated as a Lowest Price Technically Acceptable procurement, and the plaintiff's proposal price was lower than that of the awardee. Because the contracting officers did not open the plaintiff's email, the plaintiff's proposal was not even considered.

## V.   RELIEF

The plaintiff seeks a permanent injunction to remedy State's error.[6] (ECF 16, ¶¶ 29-35.) Specifically, the plaintiff requests that the Court order State to "(i) terminate the contract awarded to [MSS Security] for convenience; (ii) accept CGS-SPP's proposal for evaluation; (iii) re-open discussions with all offerors to update their proposals; and (iv) evaluate said proposals to make a new award decision." (ECF 19 at 12.)

---

[5] The Court's holding under the specific facts of this solicitation is consistent with the general rule applied by this court in claims filed with agencies under the Contract Disputes Act ("CDA"). "This Court has rejected attempts by the government to attack a contractor's submission of a claim based on its submission to the wrong government employee." *United Partition Sys., Inc. v, United States*, 59 Fed. Cl. 627, 638 (2004) (citing *Flying Horse v. United States*, 49 Fed. Cl. 419, 428-29 (2001)); *accord Rollock Co. v. United States*, 115 Fed. Cl. 317, 328 (2014). Admittedly, filing a claim under the CDA presents a different proposition than submitting a proposal in response to a solicitation, which could have pretermitted any issue had it been clear on its face as to whom offerors had to submit their proposals. Nonetheless, the analogy to the CDA cases is instructive.

[6] The defendant argues that the plaintiff conceded that injunctive relief is not warranted by not discussing injunctive relief in the plaintiff's response brief. (ECF 25 at 12.) The plaintiff has not waived its request for injunctive relief. It properly requested an injunction in its complaint and motion for judgment on the administrative record. (ECF 16, ¶¶ 29-35, Prayer for Relief (C); ECF 19 at 10-12.)

To obtain permanent injunctive relief, the plaintiff bears the burden of establishing four factors:

> (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

*PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). Once the plaintiff has succeeded on the merits, no single factor alone is dispositive, so "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).[7]

The first factor favors granting injunctive relief. The plaintiff has demonstrated success on the merits of its case.

The plaintiff will suffer irreparable harm if the Court withholds injunctive relief. The plaintiff argues that there is no effective monetary remedy, and that only injunctive relief would offer a complete remedy. (ECF 19 at 11.) This court has found irreparable harm when a protestor loses the opportunity to compete because, as Judge Wolski has explained, "[t]he alternative to a permanent injunction—recovery of bid preparation and litigation costs—does not redress the loss of the opportunity to compete on a level playing field for a valuable business contract." *ARxIUM Inc. v. United States*, 136 Fed. Cl. 188, 208 (2018); *see also Klinge Corp. v. United States*, 82 Fed. Cl. 127, 138 (2008) (providing as another basis to find monetary relief inadequate the "failure to have a bid 'fairly and lawfully considered'" (quoting *Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 370 (2004))). Because State here did not consider the plaintiff's proposal, the plaintiff was denied its opportunity to compete for the contract.

The defendant argues that the plaintiff has failed to demonstrate irreparable harm due to the length of time the plaintiff waited before initiating this litigation. Proposals were submitted in January 2021, and State made the award in March 2021. The plaintiff did not ask State about the status of its proposal until July 2021. The plaintiff submits that the defendant's argument implicitly invokes laches, an affirmative defense that must be pleaded with specificity. (ECF 26 at 2.) Precedent, however, supports the proposition that the Court should analyze a plaintiff's alleged delay in seeking relief under the factor of irreparable harm. *See Eskridge Rsch. Corp. v.*

---

[7] *FMC Corp.* described the standard for a preliminary injunction, but that standard also applies in the permanent-injunction context. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

*United States*, 92 Fed. Cl. 88, 99-100 (2010). This analysis does not necessarily implicate the doctrine of laches. For example, in *Eskridge* Judge Firestone found no irreparable harm when a plaintiff learned of an allegedly harmful agency action but then waited more than five months to seek relief. *Id.*

The Court finds, however, that the plaintiff's delay in seeking relief in this case was largely not of the plaintiff's own making. State failed to announce its award in SAM, the platform on which the RFP was posted. As a result, the plaintiff did not learn of the award until its officials saw media reporting in July 2021.[8] While the plaintiff should have made an inquiry sooner than it did, the plaintiff did not delay once it did learn of the award, contacting State the same day it learned of the award, and it protested days after getting an adverse response from State. The plaintiff's prompt action after it learned of the award thus distinguishes this case from *Eskridge*. 92 Fed. Cl. at 99-100. State must bear the cost of failing to provide a public announcement through SAM or similar means when it is that failure that led to the delay between March and July 2021.[9] As a result, although it is a close call, the Court finds that the plaintiff would suffer irreparable harm without an injunction and did not unduly delay in seeking relief.

The third factor requires the Court to weigh the hardships to the respective parties. The plaintiff argues that State will not be harmed because there was no transition period, given that the incumbent received the award. (ECF 19 at 11.) Although the defendant argues that an injunction would disrupt the "critical work" of providing guard services (ECF 25 at 11), the plaintiff points out that State's needs would be met during any corrective action ordered by the

---

[8] When pressed at oral argument on the length of time it took before the plaintiff made an inquiry after learning of the award, counsel for the plaintiff asserted that it can often take many months for State to make an award under solicitations for overseas protective services. The record is devoid of evidence to support that assertion, but the plaintiff is experienced in bidding for these types of contracts, and the defendant did not dispute the assertion.

[9] State posted the contract award data to www.fpds.gov no later than May 14, 2021. (AR 4255-57; *see also* AR 4264 n.1 (explaining the uncertainty of when all the information was uploaded to fpds.gov).) The status of the Federal Procurement Data System ("FPDS") is not clear. Although the website "remains the authoritative source for entering and viewing details about contract award data" if you are searching for details on specific contracts, the website warns on its landing page that the site's reports function has been retired since October 17, 2020:

> **Attention:** FPDS reports module is now retired. Go to SAM.gov to access any Contract Data Reports.
>
> On **October 17, 2020**, the FPDS reports module retired and the SAM.gov Data Bank is the only place to create and run both standard and ad hoc reports on federal contract data.

Federal Procurement Data System, https://www.fpds.gov/fpdsng_cms/index.php/en/ (last visited Jan. 12, 2022) (bold in original) (hyperlinks omitted).

Court (ECF 19 at 11). (*See also* ECF 26 at 3 (explaining in the plaintiff's supplemental brief that State could continue services with MSS Security through a bridge contract during a re-evaluation).) The Court finds that an injunction would not disrupt the critical security services provided for in the procurement. As the plaintiff noted, MSS Security can continue to provide the services under a bridge contract while State conducts a re-evaluation or resolicits proposals; nothing in the Court's order would prohibit such a bridge contract. Compared to the burden on the defendant of having to compensate for its own error by conducting a renewed procurement that comports with legal requirements, the hardship on the plaintiff from the loss of the opportunity to compete is significant. *See ARxIUM Inc.*, 136 Fed. Cl. at 208-09 (weighing in favor of injunctive relief the plaintiff's loss of opportunity to compete and the government's ability to mitigate its prospective harm and declining to credit prospective harms caused by the government's own delays and procurement errors). The balance of hardships leans towards the plaintiff, which was excluded from competing for award by State's error.

The fourth factor also favors granting injunctive relief. The plaintiff argues that an injunction would serve the public interest by preserving the integrity of the bidding process and by enforcing the procurement regulations. (ECF 19 at 11-12.) "An important public interest is served through conducting 'honest, open, and fair competition' under the FAR, because such competition improves the overall value delivered to the government in the long term." *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 294 (2016) (citing *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 495 (2013)); *see also Bilfinger Berger AG Sede Secondaria Italiana v. United States*, 94 Fed. Cl. 389, 393 (2010) ("[T]he public interest in preserving the integrity and fairness of the procurement process is served by enjoining arbitrary or capricious agency action . . . ."). In arguing that the public interest does not support an injunction, the defendant highlights that MSS Security has already completed much of the base contract and that an injunction would disrupt guard services. (ECF 22 at 20-21; ECF 25 at 11.) As noted, the Court's injunction would not disrupt the local guard services for the U.S. Mission Australia, and the length of completed performance does not overcome the public interest in preserving the integrity of the bidding process. The Court finds that the public interest favors an injunction.

In sum, the four factors favor the Court's granting of a permanent injunction. State must terminate the contract with MSS Security but may enter a bridge contract to ensure the continuity of security services until a new contract is in place. Conditions may have changed since January 2021, when the original proposals were submitted. State is in the best position to decide how to proceed. State must, however, either recompete the contract or revisit the proposals submitted in response to the original solicitation, to include the plaintiff's proposal.

## VI.   CONCLUSION

Although the RFP was ambiguous by not specifying which official State intended as the designated recipient for proposals, that ambiguity was latent, and the plaintiff's objection is not waived pursuant to *Blue & Gold Fleet*. The plaintiff reasonably interpreted the RFP to permit submission to the designated contracting officers at the issuing government office, and the plaintiff's interpretation of the RFP is the most reasonable reading of the RFP's requirements.

Accordingly, the plaintiff's motion for judgment on the administrative record is granted, and the defendant's cross-motion for judgment on the administrative record is denied.

Having found a permanent injunction to be appropriate relief, the Court enjoins State's award to MSS Security. State has two options to remedy its error: (1) recompete the contract; or (2) revisit the proposals submitted by offerors, including the plaintiff, in response to the original solicitation.

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**